UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPENCER WILLIAMS,

               Petitioner,

                                       Civil Number 14-12171

v.                                       Honorable David M. Lawson

KENNETH ROMANOWSKI,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Michigan prisoner Spencer Williams has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions for assault with intent to murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony firearm), after a bench trial in the Wayne County, Michigan circuit court. He was sentenced to concurrent prison terms of 18 to 30 years plus a consecutive term of two years. Williams contends that the trial evidence was insufficient to support his convictions, trial and appellate counsel were ineffective, the prosecutor committed misconduct, the trial court failed to consider a lesser included offense, and the bind-over decision was defective. The respondent filed an answer to the petition contending that it should be denied because the claims lack merit and certain claims are barred by procedural default. The Court finds that the petitioner's claims do not warrant federal habeas relief. The Court, therefore, will deny the petition.

I.

The petitioner's convictions arise from the non-fatal shooting of Damon Moore outside of Moore's residence in Hamtramck, Michigan in October 2009. Before trial, the petitioner was offered a plea deal in which he could plead guilty to assault with intent to murder and felony firearm

in exchange for the dismissal of other charges, coupled with a sentencing agreement of consecutive prison terms of 11 to 20 plus two years.  Against the advice of counsel, he rejected that offer and proceeded with a bench trial.

At trial, 31-year-old victim Damon Moore testified that he and the petitioner were like brothers.  The petitioner had dated his cousin and they had known each other for 15 years.  He never had a problem with the petitioner.  That changed on October 4, 2009.

That night, Moore went to a party hosted by the petitioner's cousin, which was only a few blocks from his house.  He was at the party with the petitioner and another man named Mike and he drank a few beers.  At some point, the petitioner asked to borrow his car to go pick up some girls.  Moore let him take the car.  The petitioner was gone for several hours, perhaps as long as six hours, which upset Moore.

When the petitioner returned, the girls were in the backseat.  Moore got into his car with the petitioner, Mike, and the girls and they drove back to Moore's house sometime after midnight.  Moore went into the house and spoke to his girlfriend.  He then went back outside to park his car in back of the house.  As he drove in the alley, the petitioner with Mike and the two girls, now in the petitioner's car, followed him.  The petitioner flashed his lights.  Moore stopped his car and the petitioner came over and retrieved something from Moore's car.  Moore and the petitioner argued and tussled in the back of Moore's car.  Mike then grabbed Moore from behind and Moore let the petitioner go.  While Moore continued to tussle with Mike, the petitioner went back to his car.  When Moore next saw him, he was holding a gun, which Moore described as a black and woodgrain "AK."

The petitioner was standing about six feet away when he shot Moore in the right thigh. Moore fell down.  The petitioner walked back and forth and moved closer to Moore until he was about five feet away.  According to Moore, the petitioner looked spaced out and was saying things like, "I'm gonna start killing mother fucker, mother fucker gonna stop disrespecting me."  The petitioner then shot Moore again in the calf of the same leg while continuing to mutter to himself. He then shot Moore a third time above the knee in the same leg.

Moore was surprised by the shooting and thought that the petitioner was going to kill him. Moore also testified that the petitioner pointed the gun at his chest and tried to fire again, but it did not fire.  While the petitioner was messing with the gun, someone yelled out and threatened to call the police.  Moore yelled at them to take him to the hospital, but the petitioner, Mike, and the girls left the scene, driving away in both cars.  Moore was woozy and next remembered waking up in the hospital.  Moore underwent several surgeries and lost his right leg due to his injuries.  Moore spoke with the police, his girlfriend, and his mother at the hospital and told them that the petitioner was the person who shot him.

Moore's girlfriend, 27-year-old Tenisha Lewis, testified that she lived with Moore in the house where the shooting occurred in October 4, 2009.  She recalled that Moore went to a party hosted by one of the petitioner's relatives that day and returned home late during the early morning hours.  The petitioner's car was at the house while Moore was at the party.  She spoke with Moore on the phone around 11:00 a.m. and then spoke to him in person when he came home around 1:00 a.m., although she was not sure of the exact time.  When Moore went back outside, she got out of bed and looked out of the window.  She saw Moore get into his car and the petitioner get into his own car.  Moore pulled around to the back and the petitioner followed him.  She went back to bed.

A few minutes later, she heard three gunshots.  She called Moore's brother and told him that she heard gunshots.  The police and an ambulance arrived, as did Moore's brother.  She did not see Moore's car outside after the shooting.  When she visited Moore in the hospital, he told her who shot him and she reported it to the police.  She did not personally witness the shooting.

Hamtramck Police Officer Robert George testified that he was called to the scene of the shooting where he found Moore lying in the alley with gunshot wounds to his leg.  Moore told him his name and then fell into unconsciousness.  Moore had lost a large amount of blood and his leg looked mangled.  Officer George assisted EMS in transporting Moore to the hospital.  When George returned to the scene of the shooting, he recovered a shell casing that had been hidden in the blood and two bullets from holes in the asphalt where Moore had been lying on the ground.

The parties stipulated to the admission of Moore's medical records and stipulated that the petitioner had prior felony convictions and was not eligible to possess a firearm at the time of the shooting.

Defense counsel moved for a directed verdict; the motion was denied.  The petitioner presented an alibi defense.  Defense counsel indicated that there were three potential alibi witnesses: the petitioner's sister, mother, and girlfriend.  The petitioner's sister was not present at trial and his mother and girlfriend refused to testify. The petitioner, however, testified on his own behalf, stating that he was 27 years old and admitting that he had prior convictions for theft and dishonesty and had used aliases in the past.  The petitioner acknowledged that he was Moore's friend, that he had dated Moore's cousin, and that he had known him for 15 years.  He also admitted that he did not have any problems with Moore or his girlfriend.  The petitioner denied being in the Detroit area when the shooting occurred and claimed that he was in Saginaw babysitting his sister's two children at that

time. He testified that he went to Saginaw on September 23, 2009 where he remained until his arrest

on November 13, 2009. The petitioner theorized that Moore was pinning the shooting on him

because the petitioner knew who committed the crime but refused to tell Moore. The petitioner also

testified that Moore was a gang member who had been on *America's Most Wanted* and that Moore

was blaming him for the shooting because he knew about murders that Moore had committed.

The trial court found the petitioner guilty of assault with intent to commit murder, felon in

possession, and felony firearm, explaining:

> In reviewing the evidence presented in this matter, I've considered most significantly
> the testimony of Damon Moore and that testimony that I found to be important and
> to be credible was Mr. Moore's testimony that the Defendant borrowed his vehicle,
> that that was at a party on October 4th, 2009, that was a family member of the
> Defendant. Mr. Moore described it as his cousin's. And that was a 2002 Cadillac
> that was borrowed and the purpose of borrowing the car was that he was going to —
> Mr. Williams was going to find some women to bring back to the party.
>
> Mr. Moore testified that he drank some beers at the party and that he initially said no
> to borrowing the car but eventually allowed Mr. Williams to borrow the car. And at
> one point, after several hours, he called Mr. Williams and Mr. Williams indicated
> he'd come back and he didn't but he did eventually come back with two girls in the
> back seat.
>
> That eventually they left the party, went back to Mr. Moore's house on Lumpkin and
> that was also the home of Tenisha Lewis. And that Mr. Moore indicated that he went
> inside and spoke to Ms. Lewis and when he came back out, he got in his vehicle and
> was going to pull it around to the back of the alley where he was going to park it, but
> that the lights were flashed on the car that Mr. Williams was driving. Then he
> stopped and got out of the vehicle and that's when the fight ensued. He called it a
> tussle between himself and Mr. Williams. And that that tussle lasted for a short
> while and that when that broke up, I think my recollection of the testimony was it
> broke up in part because this individual who was identified as Mike, and say for the
> record that Mr. Moore testified that he didn't know Mike's last name. He said he
> thought it might be Mike Johnson, but wasn't sure what his name — but Mike
> grabbed him around the neck and they began to tussle and it was at that point that he
> noticed that Mr. Williams had got a gun, which he identified as an AK-47, was
> pointing it at him and he said that he was pointing it at the area between his stomach
> and his leg and he was about six feet away pointing the gun at him.

-5-

And at that point, he says he was shot by Mr. Williams in the right thigh, at which point, he fell to the ground, as he said, on his butt and his legs separated. And he indicated that at that point, the Defendant was walking back and forth about five feet away. And as he indicated in his testimony, looking spaced out and saying things like motherfucker gonna start (as spoken) disrespecting me. And at which point, he shot him again, this time in the lower leg, in the calf area. And again, him, Mr. Moore, indicated that the Defendant appeared to be talking to himself and then shot him in the leg a little above the knee and Mr. Moore indicated he thought he was going to die. And at that point, he says he heard the Defendant say, "It's time for motherfuckers to die." And at that point, the — he said the Defendant, Mr. Williams, was pointing the gun at his chest. He tried to shoot the gun and he says he was about five feet away and the gun wouldn't fire. He heard some — and he said specifically he saw him pulling on the trigger of the gun but it wouldn't fire.

At that point he heard someone hollering, someone in the neighborhood. And Mr. Moore says I kept telling him to take me to the hospital. At that point, he says the Defendant and Mike and the two girls who were in the car drove away. And he was left there bleeding profusely from his right leg. I found his testimony to be credible, with respect to what occurred.

I also found the testimony of Tenisha Lewis to be credible. And in specific, her testimony that Damon Moore did in fact drive a black Cadillac Deville and more specifically what I found to be credible was that she saw Spencer Williams late that night or early morning when Damon Moore came back. She talked with him and then she looked out the window and she saw both Damon Moore and Spencer Williams out in front of the house and that they then — the last she saw of them the cars were driving around the corner and the next thing she knows, she heard the three shots. She went out and looked in the back alley and didn't see anything and went back in and called Damon's brother and then shortly after that she learned from the police that someone had been shot and she proceeded to Detroit Receiving Hospital where she found out in fact that it was Damon Moore that had been shot. And she did indicate that there were three shots that she heard, which was consistent with the testimony of Mr. Moore.

I'll also point out that the testimony from Police Officer Robert George I found to be credible. That in particular what I thought was interesting was that he found two bullets in the asphalt, which would indicate to me, the consistency in terms of the testimony from Mr. Moore that he was shot twice in the leg when he was laying down after he had been shot the first time and fell down. So I think it adds to the credibility and consistency of the testimony from Mr. Moore.

Now I've also considered the testimony of the one defense witness, that being the Defendant himself, Mr. Williams. I find Mr. Williams' testimony to be less than credible. I've taken into consideration the fact that as indicated in his cross-

examination, he has used other names such as John Jackson and Robert Jackson. He has two prior convictions that relate to theft or dishonesty: one stealing from a mall, another regarding a sticker, an illegal sticker, that was used for his vehicle. And this indicates to me a pattern of less than honesty in terms of his characteristics.

But perhaps what is the most compelling thing about the testimony is I tried to get a better understanding of, in terms of — Mr. Williams' testimony was that he was being falsely accused by Mr. Moore because he was on America's Most Wanted and he was a gang member himself. But I just — I saw no connection between that and why he'd single out Mr. Williams. He was asked specifically by the prosecution, was there any beef between you. No, there was no beef. There was no beef between him and Ms. Lewis [sic]. So the whole concept of just blindly picking Mr. Williams as the person he's going to accuse for someone else committing this terrible act to him that nearly killed him and caused him to lose his leg, just didn't add up and didn't make sense to me. And as I indicated, I found it less than credible.

I find the testimony, with respect to not only the fact that he was shot terribly three times in the leg and left bleeding at that point, but also the testimony regarding the fact that he attempted to shoot him in the chest and made the statement regarding that it was time for him to die, to be credible. And it's on that basis that I find Mr. Williams guilty of Count 1, assault with intent to murder. Because Counts 2 and 3 were pled in the alternative, I am not ruling on those since I found him guilty of the more serious offense of assault with intent to murder.

I also find him guilty on Count 4, weapons, firearm possession by a felon. There was a stipulation as to a prior felony conviction.
. . .
I find him guilty of Count 5, felony firearm because I find that he did have possession of an assault rifle at the time of the shooting of Mr. Moore and therefore guilty of felony firearm.

Trial Tr. at 103-09 (Mar. 24, 2010) (some punctuation and grammar corrected for clarity). The trial court subsequently sentenced the petitioner to the concurrent prison terms noted earlier.

The petitioner filed a direct appeal in the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence and newly-discovered evidence. The court denied relief on those claims and affirmed his convictions. *People v. Williams*, No. 297732, 2011 WL 2859296 (Mich. Ct. App. July 19, 2011). The Michigan Supreme Court denied the petitioner's application for leave to appeal. *People v. Williams*, 490 Mich. 1003, 807 N.W.2d 317 (2012).

-7-

The petitioner filed a motion for relief from judgment in the trial court raising claims concerning the sufficiency of the evidence, newly-discovered evidence, the effectiveness of trial and appellate counsel, the conduct of the prosecutor, the failure to consider a lesser included offense, the bind-over decision, and the validity of his sentence.  The trial court denied relief, finding that the claims that had previously been raised and denied on direct appeal were barred by Michigan Court Rule 6.508(D)(2), the remaining claims were barred by Michigan Court Rule 6.508(D)(3) because the petitioner failed to establish good cause for failing to raise those claims on direct appeal, and those remaining claims also lacked merit.  *People v. Williams*, No. 09-029211-01 (Wayne Co. Cir. Ct. Jan. 22, 2013).  The Michigan Court of Appeals denied the petitioner's delayed application for leave to appeal because he failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *People v. Williams*, No. 314833 (Mich. Ct. App. Oct. 8, 2013).  The Michigan Supreme Court denied his ensuing application for leave to appeal.  *People v. Williams*, 495 Mich. 978, 843 N.W.2d 763 (2014).

The petitioner thereafter filed his federal habeas corpus petition, in which he raises the following claims:

I.      He was deprived of his Fifth and Fourteenth Amendment rights based upon insufficient evidence to support the verdict.

II.     He is entitled to an evidentiary hearing or new trial based upon newly-discovered evidence.

III.    He was deprived of his Sixth Amendment right based upon ineffective assistance of trial counsel.

IV.     He was deprived of his Sixth Amendment right based upon ineffective assistance of appellate counsel.

V.      He was deprived of his Fifth and Fourteenth Amendment rights based upon prejudicial prosecutorial remarks.

-8-

VI.    He was deprived of his Fifth and Fourteenth Amendment rights based upon the prosecutor's and the trial court's failure to consider the lesser included offense of assault with intent to do great bodily harm less than murder.

VII.    He was deprived of his Fifth and Fourteenth Amendment rights based upon the bind-over decision. The Michigan Court of Appeals abused its discretion by denying his motion for remand to the trial court based upon new evidence.

The respondent opposes the petition contending that the claims lack merit, that certain claims are barred by procedural default, and that habeas relief is not warranted.

The "procedural default" argument is a reference to the rule that the petitioner must preserve properly some of his claims in state court, and the state court's denial of those claims because he did not follow the correct procedure to raise them is an adequate and independent ground for the denial of relief under state law, which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Williams filed his petition after the AEDPA's

effective date, its standard of review applies.  Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks

and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner first contends that the prosecution presented insufficient evidence to support his convictions, because it failed to present sufficient evidence of his identity as the perpetrator and his intent to kill the victim.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, "does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (citation and footnote omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's

resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *Cavazos v. Smith*, 565 U.S. 1, 2-3 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* at 4. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, ---, 132 S. Ct. 2060, 2065 (2012).

Under Michigan law, the elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law); *People v. Ericksen*, 288 Mich. App. 192, 195, 793 N.W.2d 120 (2010); Mich. Comp. Laws § 750.83. The elements of felon in possession are: (1) the defendant was convicted of a felony, (2) the defendant possessed a firearm, and (3) at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *People v. Perkins*, 262 Mich. App. 267, 269, 686 N.W.2d 237 (2004), *aff 'd* 473 Mich. 626, 703 N.W.2d 448 (2005) *abrogated on other grounds by People v. Smith-Anthony*, 494 Mich. 669, 837 N.W.2d 415 (2013); Mich. Comp. Laws § 750.224f. The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

Additionally, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753 (2008); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409, and intent or state of mind.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).  The use of a lethal weapon supports an inference of an intent to kill.  *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.  The court explained:

> Defendant first claims that the evidence of his identity as the shooter was not proven beyond a reasonable doubt.  He specifically challenges Damon Moore's identification of defendant as the shooter and Moore's credibility as a witness.  Identity is an essential element in every criminal prosecution.  *People v. Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), citing *People v. Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).  The prosecution must present sufficient evidence to prove beyond a reasonable doubt the identity of the defendant as the perpetrator of the charged offense. *People v. Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness may be sufficient to support a conviction of a crime.  *People v. Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). Further, "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew."  *Id.*

> Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that defendant was the perpetrator of the charged offense.  Moore testified that he knew defendant for some 15 years, and the two men were like brothers.  He asserted that, on October 4, 2009, he saw defendant holding a gun, and defendant subsequently pointed the gun at him.  Defendant was approximately six feet from Moore.  Moore testified that defendant then shot him three times in the leg.  Defendant then attempted to shoot Moore a fourth time, in the chest, but the gun

malfunctioned. On cross-examination, Moore emphasized that he was positive that defendant was the person that pulled the trigger and shot him. Moore's unwavering testimony that defendant was the person who shot him was clear and positive. Moore's testimony, alone, is sufficient evidence to establish defendant's identification as the perpetrator of the crime. *Davis*, 241 Mich App at 700.

In light of defendant's testimony and argument that he was not present at the time of the shooting, defendant challenges the credibility of Moore's testimony. The question whether defendant was present and the perpetrator of the charged offense was entirely dependent on resolution of the conflicting testimony offered by Moore and defendant at trial. This resolution was wholly within the province of the trier of fact, which plainly found Moore's testimony more credible than defendant's testimony. Absent clear error, which we do not find, this Court will not interfere with the trier of fact's role in determining the credibility of the witnesses or the weight of the evidence. *See People v. Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Moore's testimony was sufficient to identify defendant as the shooter beyond a reasonable doubt.

Second, defendant disputes the sufficiency of the evidence supporting the *mens rea* element of the offense that he possessed the intent to kill Moore. "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *People v. Unger* (On Remand), 278 Mich App 210, 223; 749 NW2d 272 (2008). That is, circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of assault with intent to commit murder. *People v. Warren*, 200 Mich App 586, 588; 504 NW2d 907 (1993).

The evidence adequately established that defendant assaulted Moore with the requisite intent to commit murder. Moore testified that defendant walked over to defendant's vehicle and retrieved a gun. Defendant stood in front of Moore, approximately six feet away, and pointed the gun at Moore. Defendant then fired the gun, shooting Moore in the right thigh. Moore collapsed to the ground. Moore testified that defendant then walked closer to Moore and began pacing back and forth, grumbling, "I'm gonna [sic] start killing mother fucker, mother fucker gonna [sic] stop disrespecting me." According to Moore, defendant shot him again in his right calf. Defendant continued to pace back and forth and continued to mutter that he was going to kill Moore for disrespecting him. Defendant then shot Moore a third time in the same leg. Moore testified that defendant raised the gun and pointed it at his chest. Defendant then uttered, "it's time for mother fuckers to die," and pulled the trigger. However, the gun malfunctioned and did not discharge a fourth time.

The testimony that defendant employed a dangerous weapon like a gun to fire multiple gunshots at Moore from close proximity, and then approached Moore to fire an additional shot to his chest as he lay on the ground, gives rise to a reasonable

-14-

inference that defendant intended to kill Moore.  *People v. Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996) (affirming the defendant's assault with intent to murder conviction on the basis of testimony that the defendant "pointed a pistol at [the victim], warned him not to come any closer or he would kill him, and pulled the trigger several times (but no bullets fired)").  Further, defendant's statement, that "it's time for mother fuckers to die," followed by defendant's attempt to discharge the gun also gives rise to a reasonable inference that defendant intended to kill Moore.  Thus, the evidence amply supported the trial court's determination beyond a reasonable doubt that defendant assaulted Moore with the intent to murder him.

*Williams*, 2011 WL 2859296 at *1-2.

This reasoning is unassailable.  The court's decision certainly is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent or determination of the facts.  Damon Moore's testimony, if believed, provided sufficient evidence of the petitioner's guilt.  A victim's testimony alone can be constitutionally sufficient to sustain a conviction.  *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).  Additionally, the prosecution presented testimony from the victim's girlfriend which corroborated the victim's testimony that he was with the petitioner on the night of the shooting and contradicted the petitioner's alibi defense.  Such evidence was sufficient to support the petitioner's convictions.

The petitioner challenges the credibility of the witnesses and the trial court's evaluation of the evidence presented at trial.  However, attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence.  *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (citing *Brooks v. Tennessee,* 626 F.3d 878, 899 (6th Cir. 2010) (Daughtrey, J., concurring)).

On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is for the fact finder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that the petitioner committed the crimes of which he was convicted and that he acted with the requisite intent. Habeas relief is not warranted on this claim.

### B.

The petitioner next asserts that he is entitled to habeas relief based upon newly-discovered evidence, consisting of a post-trial telephone conversation between the defendant and the victim on which the victim doubted that the petitioner intended to kill him when he fired the rifle. The Michigan Court of Appeals rejected that claim, explaining:

> Defendant next argues that he is entitled to a new trial based on newly discovered evidence. We disagree. Defendant failed to preserve this issue by moving for a new trial in the trial court, therefore, this Court reviews this unpreserved issue for plain error affecting substantial rights. *People v. Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999); *People v. Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).
>
> A new trial may be granted on the basis of newly discovered evidence if a defendant shows that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v. Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (citations and quotation marks omitted). "However, where newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v. Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). As a result, courts are reluctant to grant new trials based on recanting testimony. *Id*. Additionally, newly

discovered evidence is not a ground for a new trial where it would merely be used for impeachment purposes, *People v. Davis*, 199 Mich App 502, 516; 503 NW2d 457 (1993), and conflicting testimony or a question regarding the credibility of a witness are not sufficient grounds for granting a new trial, *People v. Lemmon*, 456 Mich 625, 634–635; 576 NW2d 129 (1998).

The newly discovered evidence presented by defendant in this case consists of a purported jailhouse telephone conversation between Moore and defendant.  In the conversation, Moore told defendant that defendant had not intentionally shot Moore because defendant was not looking at Moore at the time defendant discharged the gun.  Moore's subsequent statements do not establish that defendant is entitled to a new trial.  Moore's statements, in the alleged jailhouse telephone conversation, are a partial recantation of his trial testimony and are inherently suspect and untrustworthy for three reasons.  First, in light of the evidence at trial, Moore's statements create an incredible picture of the shooting.  It is not plausible that defendant discharged a gun multiple times towards the ground, while pacing back and forth and without looking at where he was shooting, and coincidently shot Moore three times in the same leg.  Second, Moore's alleged statements fail to explain defendant's statements during the incident regarding killing somebody. Third, the supposition that all three shots to Moore's leg were accidental does not explain why defendant then took Moore's vehicle and left him behind bleeding profusely.  It defies sense to suppose that defendant failed to notice Moore's wounds; otherwise, defendant would have had no reason to flee the scene of what was supposedly an accident rather than take Moore to a hospital.

In addition to being simply incredible, Moore's purported statements do not suggest a different result at trial, and the fact that his purported jailhouse statements impeach part of his testimony is insufficient.  In sum, the record does not show that Moore's purported statements would make a different result probable on retrial, so defendant has failed to establish plain error affecting his substantial rights.

*Williams*, 2011 WL 2859296 at *3-4.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent or determination of the facts.  Claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact."  *Ibid*.

-17-

The Sixth Circuit has held that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent.") (citing *House v. Bell*, 547 U.S. 518, 554-55 (2006); *Herrera*, 506 U.S. at 417); *see also Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007); *Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of habeas relief on similar claim).

Moreover, the "new" evidence here does not undermine the trial evidence or cast doubt upon the validity or accuracy of the verdict. Habeas relief is not warranted on this claim.

## C.

The petitioner next asserts that he is entitled to habeas relief because pretrial and trial counsel were ineffective. He argues that pretrial counsel failed to file pretrial motions to suppress his prior convictions, to quash the assault with intent to murder charge, and to suppress based upon an illegal arrest, and for advising him that he could not be convicted of assault with intent to murder. He contends that trial counsel was ineffective by admitting his guilt during trial, failing to request a continuance due to not being prepared, failing to investigate the victim, intimidating the alibi witnesses, failing to request a continuance to prepare for a surprise witness, failing to raise an intoxication defense, failing to object to the prosecutor's conduct, failing to request a continuance to call a medical expert, failing to file a motion for new trial based upon newly-discovered evidence, and giving bad advice about the waiver of his jury trial rights.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. ---, ---, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786 (2013)). The standard is "all the more difficult" on habeas corpus review because "[t]he standards

created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel' actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Ibid.*

On collateral review, the trial court determined that this claim lacked merit. Citing the *Strickland* standard and noting the deference accorded trial counsel on matters of trial strategy, the court concluded: "Notwithstanding the laundry list of contentions that defendant raises, the court is simply not convinced that the performance of either of defendant's trial attorneys was so lacking to support a claim of ineffective assistance of counsel as established in *Strickland*." Op. of Trial Ct. at 4-7 (Jan. 22, 2013). The Michigan appellate courts denied leave to appeal.

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The petitioner fails to establish that pretrial counsel was ineffective. A motion to suppress the petitioner's prior convictions would have been folly because the petitioner's false certification conviction, as a crime of theft or dishonesty, could be used to impeach him under the Michigan Rules of Evidence, *see* Mich. R. Evid. 609(a)(1), and his prior drug conviction was admissible to prove the felon in possession charge. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Pretrial counsel also had no basis for moving to quash the assault with intent to murder charge in light of the victim's preliminary examination testimony that the petitioner shot him in the leg three times, threatened to kill him, and attempted to shoot a fourth time while pointing the gun at his chest. *See* Prelim. Exam. Tr. pp. 16-26 (Nov. 25, 2009). The petitioner also provides no facts to support

his argument that pretrial counsel had a basis to challenge the legality of his arrest. It is well-settled that conclusory allegations, without evidentiary support, are insufficient to warrant habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Moreover, the petitioner has not shown that any of the pretrial motions would have been successful. Therefore, he has not carried his burden of showing that prejudice resulted from pretrial counsel's conduct in this regard.

The petitioner asserts that pretrial counsel told him that he could not be convicted of assault with intent to murder because he shot the victim below the waist (in the leg) and that, based upon such advice, he rejected the plea offer, which included a sentencing cap. However, the petitioner has not offered evidence that any such conversation even occurred. Moreover, the record indicates that pretrial counsel was replaced by trial counsel more than 30 days before trial, *see* Motion Tr. at 3 (Feb. 18, 2010), that trial counsel and the parties discussed the plea offer on the record, *see* Trial Tr. at 3-6 (Mar. 24, 2010), and that trial counsel and the petitioner's family thought the offer was a good one, but the petitioner nonetheless maintained his innocence and rejected it. *Ibid.* The petitioner has not argued that his trial lawyer gave him bad advice on his prospects of acquittal or that he gave the petitioner bad advice. He has not shown prejudice, even assuming that pretrial counsel misinformed him.

The petitioner also contends that trial counsel was ineffective when he admitted guilt before trial, but that argument is belied by the record. There is no record before this Court of any such

-21-

admission by counsel in the state court. Counsel did say that he thought the prosecution's plea offer was a good one in light of the possible sentences the petitioner faced upon conviction. *See id.* at 4-6. But that did not amount to trial evidence; the trial court is presumed to know the law and, as the trier of fact, only to rely upon the evidence at trial in reaching a verdict. *See Moreland v. Bradshaw*, 699 F.3d 908, 927 (6th Cir. 2012) (citing *Lambrix v. Singletary*, 520 U.S. 518, 532 n.4, (1997); *Smith v. Mitchell*, 348 F.3d 177, 213 (6th Cir.2003)).

The petitioner has not shown that trial counsel performed deficiently by failing to request a continuance to prepare for trial due to a surprise witness, or to consult a medical expert. The record indicates that counsel had at least 30 days to prepare for trial, he obtained discovery, he reviewed the preliminary examination, and he was ready to proceed to trial. *See* Motion hrg at 3-4 (Feb. 18, 2010). The record does not suggest that counsel was unprepared for the one-day bench trial or that additional preparation would have benefitted the defense. The record similarly does not support the petitioner's claim that a continuance was warranted due to a surprise witness. Tenisha Lewis was on the prosecution's witness list and was not a surprise. Furthermore, the record indicates that trial counsel cross-examined Lewis at trial and confirmed that she did not witness the shooting. *See* Trial Tr. at 60 (Mar. 24, 2010). There is no evidence here that additional preparation would have benefitted defense counsel's confrontation of this witness.

The petitioner has offered nothing to substantiate his argument that a continuance was needed for a medical expert to testify about Damon Moore's injuries. Moore testified that he was shot three times in one leg and that the leg had to be amputated as a result. The parties stipulated to the admission of his medical records. The extent of Moore's injuries was not a disputed issue at trial and the petitioner has not explained how a medical expert would have benefitted his defense.

The same can be said of the argument that trial counsel should have investigated Moore. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. In this case, the record reveals that trial counsel conducted a reasonable investigation into Moore's background by reviewing the discovery and preliminary examination materials. Additionally, trial counsel cross-examined Moore and included the petitioner's questions in doing so. The petitioner has offered not facts to show what trial counsel would have discovered upon further investigation. His conclusory allegations are insufficient to justify habeas relief.

The petitioner contends that trial counsel intimidated the alibi witnesses, but the record does not show that. Rather, the record indicates that trial counsel was aware before trial of three potential alibi witnesses: the petitioner's sister, his girlfriend, and his mother. The petitioner's sister did not appear for trial, but counsel was prepared to present his girlfriend and his mother as alibi witnesses. Both, however, refused to testify. *See* Trial Tr. at 6-7, 11-12, 71-72 (Mar. 24, 2010). Trial counsel then consulted with the petitioner, who decided to testify on his own behalf in support of his alibi defense. *Id*. at 72-74. There is no evidence that trial counsel improperly intimidated any witnesses. The fact that he may have advised the potential witnesses about the dangers of perjury does not constitute intimidation. Counsel was clearly willing to have them testify and to present an alibi defense. The petitioner has not shown that counsel acted improperly. And the petitioner falls short

of a prejudice showing, because he has offered no evidence to show that the witnesses would have credibly supported his alibi defense.

Based on Damon Moore's testimony that the petitioner looked "spaced out" in the midst of the shooting, was pacing, and was muttering about killing Moore for being disrespectful, the petitioner believes that his lawyer should have raised an intoxication defense. But there was no evidence that the petitioner was intoxicated. That was not a strategic error by trial counsel. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (holding that lack of success from trial counsel's strategy does not mean that he was ineffective).

The petitioner also criticizes trial counsel's failure to object to the prosecutor's conduct. As discussed later, however, the underlying misconduct claims lack merit. Therefore, the petitioner cannot establish that trial counsel erred or that he was prejudiced by counsel's conduct. Counsel cannot be deemed ineffective for failing to make a meritless argument or futile objection. *See Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225.

The petitioner says that trial counsel was ineffective by failing to file a motion for new trial based upon newly-discovered evidence. The record indicates that trial counsel first became aware of the new evidence (the petitioner's post-trial phone call with Moore) at sentencing. *See* Sent. Tr. at 8 (Apr. 7, 2010). Trial counsel thus could not have filed a motion for new trial before that, and he cannot be deemed ineffective for failing to take action without the necessary information to do so. *See Strickland*, 466 U.S. at 691. Moreover, the petitioner cannot establish prejudice, because appellate counsel raised the newly-discovered evidence issue on direct appeal and the Michigan Court of Appeals ruled that the claim lacked merit.

Finally, the petitioner contends that trial counsel was ineffective when he advised him about the jury trial waiver. The decision to waive a jury and proceed with a bench trial is a "classic example of strategic trial judgment" for which *Strickland* requires deferential judicial scrutiny, particularly on habeas review. *See Walendzinski v. Renico*, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (citation omitted). Trial counsel's advice to waive a jury and proceed with a bench trial "constitutes a conscious, tactical choice between two viable alternatives." *Ibid.* Looking at the facts of the case, trial counsel may have reasonably determined that it was in the petitioner's best interest to waive a jury trial and proceed with a bench trial with the hope of being convicted of a lesser offense or being given a lesser sentence. The petitioner says that counsel advised him that he would not go to prison if he had a bench trial and told him to lie about that promise. But once again, that assertion is not supported by the record, which indicates that the petitioner knowingly and voluntarily waived his jury trial right without ever mentioning counsel's alleged promise or improper advice. *See* Pretrial Hrg Tr. at 3-6 (Mer. 18, 2010). That assertion, moreover, is undercut by counsel's advice that the plea offer with the sentence cap amounting to 13 years was a good offer. It is doubtful that counsel would have advised the petitioner that he would be acquitted or not receive prison time if convicted following a bench trial. Furthermore, the petitioner has not shown that he was prejudiced by counsel's advice to proceed with a bench trial. There is no indication that the trial court was biased against him or that a jury would have reached a more favorable verdict upon hearing the same evidence presented at trial. *See Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

The petitioner has not shown that he was deprived of the effective assistance of counsel before or during trial.

D.

The petitioner next asserts that he is entitled to habeas relief because appellate counsel was ineffective by failing to raise the ineffective assistance of pretrial and trial counsel claims that he raised in his motion for relief from judgment on direct appeal, for not filing a motion for new trial in the trial court, and for failing to play the newly-discovered evidence recording during oral argument on appeal.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the appeal. *Strickland*, 466 U.S. at 687. However, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of

-26-

appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

On collateral review, the trial court denied relief on this claim, citing *Jones v. Barnes* as well as the *Strickland* standard. Op. of Trial Ct. at 3-7 (Jan. 22, 2013).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or determination of the facts. The petitioner fails to show that by omitting the listed claims, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including sufficiency of the evidence and newly-discovered evidence claims. None of the other claims subsequently raised by the petitioner are "dead-bang winners," as evidenced by the state trial court's alternative ruling that the claims lacked merit. Moreover, even if appellate counsel erred in some fashion, the petitioner cannot show that he was prejudiced by counsel's conduct given that the underlying claims lack merit. For the reasons discussed earlier, that decision does not contravene or unreasonably apply federal constitutional law. *See Strickland*, 466 U.S. at 687 (requiring a showing of prejudice); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (holding that "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit'") (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

The petitioner also contends that appellate counsel was ineffective by not filing a motion for new trial in the trial court. Although appellate counsel did not move for a new trial, he did move in the court of appeals to remand to the trial court, but his request was denied. There is no indication

that a new trial motion would have been successful.  And no prejudice is shown.  The Michigan

Court of Appeals considered the merits of the newly-discovered evidence issue on plain error review

and denied relief; and this Court has found that the newly-discovered evidence claim lacks merit.

The petitioner thus cannot establish that appellate counsel was ineffective.  Habeas relief is not

warranted on this claim.

<div align="center">E.</div>

The petitioner next asserts that he is entitled to habeas relief due to prosecutorial misconduct.

He says that the prosecutor improperly used out-of-court statements, argued sympathy for the victim,

vouched for the victim's credibility, used misstatements to refresh the victim's memory, improperly

impeached him with a prior juvenile conviction and his use of aliases, and offered the victim's

testimony about his injuries without a medical expert.

The Supreme Court has made clear that prosecutors must "refrain from improper methods

calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To

prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that

the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting

conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also*

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S.

37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

On collateral review, the trial court found these issues to be unpreserved due to the

petitioner's failure to object at trial, but considered the claims on plain error review and ruled that

they lacked merit.  The court essentially found that the prosecutor's conduct was proper, that any

errors did not rise to the level of misconduct, or that the petitioner's allegations were conclusory and

<div align="center">-28-</div>

unsupported the record.  Op. of Trial Ct. at 8-10 (Jan. 22, 2013).  The Michigan appellate courts denied leave to appeal.

The state trial court correctly decided that question.  The petitioner has not shown that the prosecutor's conduct was improper or that it rendered his trial fundamentally unfair.  The petitioner first asserts that the prosecutor improperly used an out-of-court statement by asking him on cross-examination if he remembered calling the police and saying that he wanted to turn himself in.  This was an appropriate attempt to impeach the petitioner under the Michigan Rules of Evidence.  *See* Mich. R. Evid. 801(d)(2)(A) (statements made by party opponents are not hearsay).  Moreover, no out-of-court statement was actually admitted into evidence.

The petitioner also asserts that the prosecutor improperly sought sympathy for the victim and vouched for the victim's credibility by commenting on his injuries and why he should be believed. It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudice of the jurors," *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991), or to encourage them to decide a case based upon their feelings instead of the evidence, *Johnson v. Bell*, 525 F.3d 488, 484 (6th Cir. 2008).  It is also improper for a prosecutor to express her own personal opinions as to a witness's credibility.  *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).  Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury, which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented.  Also, the prosecutor's opinion carries with it the imprimatur of the State and may induce the jury to trust the State's judgment rather than its own.  *Young*, 470 U.S. at 18-19; *Cristini v. McKee*, 526 F.3d

888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing

cases).  In this case, the prosecutor did not invoke sympathy for Damon Moore by commenting on

his injuries.  Rather, the prosecutor's comments were based upon the evidence and were necessary

to prove the elements of assault with intent to commit murder.  The prosecutor also did not vouch

for Moore's credibility.  Rather, she argued that Moore should be believed because of the substance

of his testimony, his demeanor, and the other evidence at trial.  It is well-established that a

prosecutor may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535

(6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief, *Portuondo*

*v. Agard*, 529 U.S. 61, 69 (2000).  The prosecutor's arguments were proper.

The petitioner also asserts that the prosecutor improperly used misstatements to refresh

Moore's memory.  The prosecutor's use of a leading question involving the choice between two

street names to refresh Moore's memory about where the shooting occurred was appropriate under

Michigan law.  *See* Mich. R. Evid. 611(d)(1); Mich. Comp. Laws § 768.24.  The question was not

a misstatement of any facts.

The petitioner next asserts that the prosecutor improperly impeached him with a ten-year-old

juvenile conviction and his use of aliases.  Under Michigan law, a prosecutor may impeach a witness

with a prior conviction for theft or dishonesty.  *See* Mich. R. Evid. 609(a)(1).  The petitioner has one

such *adult* conviction, which was less than 10 years old at the time of trial.  *See* Offender Tracking

Information System Profile, http://mdocweb.state.mi.us/OTIS2/

otis2profile.aspx?mdocNumber=534733.  The petitioner presents no support for his argument that

the prosecutor relied upon a ten-year-old juvenile conviction.  Also, under Michigan law, a

prosecutor can impeach a testifying defendant's credibility with his use of aliases.  *See People v.*

-30-

*Messenger*, 561 N.W.2d 463, 468 (Mich. Ct. App. 1997) (citing Mich. R. Evid. 608 and 609). The prosecutor thus properly impeached the petitioner with his prior conviction and his use of aliases.

Lastly, the petitioner asserts that the prosecutor improperly used Moore's testimony about his injuries without presenting a medical expert. Moore, however, could appropriately testify about his own injuries and treatments because that information was within his personal knowledge and did not involve scientific, technical, or other specialized knowledge. *See* Mich. R. Evid. 602. Moreover, the parties stipulated to the admission of Moore's medical records.

Furthermore, even if the prosecutor's conduct were improper, the petitioner has not shown that he was prejudiced. The fact that the trial judge was the trier of fact mitigates any possible prejudice arising from the alleged prosecutorial misconduct. A bench trial judge is presumed to have considered only relevant and admissible evidence in reaching his or her decision. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam ) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."); *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir.1986) (presumption in federal criminal bench trial is that trial judge only considered properly admitted evidence); *Brown v. Pitcher*, 19 F. App'x 154, 157 (6th Cir. 2001) (applying the rule in a habeas case). In this case, there is nothing in the record to rebut the presumption that the trial court based its verdict only on the properly admitted evidence rather than on any improper conduct or comments by the prosecutor. The petitioner fails to establish that the prosecutor erred or that any improper conduct rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

F.

The petitioner next asserts that he is entitled to habeas relief because neither the prosecutor nor the trial court properly considered the lesser offense of assault with intent to commit great bodily harm less than murder. On collateral review, the trial court determined that this claim lacked merit. The court discussed the elements of assault with intent to commit murder and the lesser offense of assault with intent to do great bodily harm less than murder and found that the evidence amply supported the greater charge and the petitioner's conviction of that offense. Op. of Trial Ct. at 7-8 (Jan. 22, 2013). The Michigan appellate courts denied leave to appeal.

The record simply does not support this argument. First, the prosecutor included the lesser offenses of assault with intent to do great bodily harm less than murder and assault with a dangerous weapon as alternate charges for the trial court's consideration during the bench trial. Second, as discussed above, the trial court is presumed to know and follow the law. Finally, the evidence elicited at trial was sufficient to support the charge of which the petitioner was convicted. Habeas relief is not warranted on this claim.

G.

The petitioner asserts that he is entitled to habeas relief based upon the state court's bind-over decision. On collateral review, the trial court determined that this claim was untimely and moot because the petitioner was convicted after a finding of guilt beyond a reasonable doubt at trial. Op. of Trial Ct. at 10 (Jan. 22, 2013). The Michigan appellate courts denied leave to appeal.

No error resulted from that decision. The Constitution does not require a probable cause hearing to be conducted prior to a criminal trial. *See Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n.26 (1975). An "illegal . . . detention does not void a subsequent conviction." *Id.* at 119. Therefore,

a state court's decision to hold a person for trial does not implicate a federal constitutional right, especially when there is sufficient evidence of the crime presented at trial to satisfy the Due Process Clause. The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D. Mich. 2004) (denying habeas relief on petitioner's claim there was insufficient evidence to bind him over for trial).

Habeas relief is not warranted on this claim.

## H.

Lastly, the petitioner asserts that he is entitled to habeas relief because the Michigan Court of Appeals erred in denying his motion for a remand based upon his newly-discovered evidence. This claim, however, is not cognizable upon habeas review. The decision about whether to grant or deny a motion to remand in the state courts is strictly a question of state law. *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006). Such state law issues are not subject to federal habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Estelle*, 502 U.S. at 68 ("federal habeas corpus relief does not lie for errors of state law" ). Habeas relief is not warranted on this claim.

## III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 21, 2017

<div style="border: 1px solid black;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 21, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI

</div>